**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-18-0000350**
**11-APR-2019**
**08:23 AM**

NO. CAAP-18-0000350

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee,
v.
CHARLY HERNANE, also known as CHARLIE HERNANE,
Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 11-1-0699)

SUMMARY DISPOSITION ORDER
(By: Ginoza, Chief Judge, Fujise and Hiraoka, JJ.)

A jury convicted Defendant-Appellant Charly Hernane, also known as Charlie Hernane (**Hernane**), of Murder in the Second Degree. He appeals from the Judgment of Conviction and Sentence (**Judgment**) entered by the Circuit Court of the First Circuit (**Circuit Court**)[1] on April 17, 2018. Hernane contends that the Circuit Court erred by:

     1.   denying his motion to dismiss the indictment; and

     2.   giving prohibited "Allen charges" to the jury.

For the reasons explained below, we affirm the Judgment.

I.

On May 18, 2011, Hernane was charged by indictment with Murder in the Second Degree. In 2013 a jury found him guilty as charged. He appealed. We reversed the conviction and remanded

---

[1] The Honorable Rom A. Trader presided.

for a new trial. <u>State v. Hernane</u>, No. CAAP-13-0005212, 2015 WL 7726353 (Haw. Ct. App. Nov. 30, 2015) (mem.). The State applied to the Hawai'i Supreme Court for a writ of certiorari. The application was rejected. <u>State v. Hernane</u>, No. SCWC-13-0005212, 2016 WL 1204425 (Haw. Mar. 23, 2016).

Hernane's second trial was set for February 5, 2018. His attorney informed the Circuit Court and the State that he intended to move to dismiss the indictment for violation of Hawai'i Rules of Penal Procedure (**HRPP**) Rule 48 (2000). The motion was filed and heard on February 5, 2018. The State called one witness, Malia Rausch (**Rausch**) and offered four exhibits that were admitted into evidence for purposes of the hearing. After hearing arguments from counsel, the Circuit Court orally denied the motion and began the jury trial. The jury returned a verdict against Hernane on February 15, 2018. The Circuit Court entered its Findings of Fact, Conclusions of Law, and Order Denying Defendant's Motion to Dismiss Indictment (**FOF&COL**) on February 27, 2018. This appeal followed.

## II.

### A. The Circuit Court Did Not Err When it Denied the Rule 48 Motion to Dismiss

HRPP Rule 48 provides, in relevant part:

> (b) <u>By court</u>. . . . [T]he court shall, on motion of the defendant, dismiss the charge, with or without prejudice in its discretion, if trial is not commenced within 6 months:
>
> . . . .
>
> > (3) from the date of . . . remand, in cases where such events require a new trial.
>
> . . . .
>
> (c) <u>Excluded periods</u>. The following periods shall be excluded in computing the time for trial commencement:
>
> . . . .
>
> > (5) periods that delay the commencement of trial and are caused by the absence or unavailability of the defendant[.]

The rule does not define the term "unavailability" but we have adopted the standard established by the Federal Speedy Trial Act, 18 U.S.C.S. § 3161(h)(3)(B) (Law. Co-op. 1979):

> a defendant . . . shall be considered unavailable whenever his [or her] whereabouts are known but his [or her] presence for trial cannot be obtained by due diligence.

State v. Jackson, 8 Haw. App. 624, 630, 817 P.2d 130, 135 (1991) (original brackets deleted).

> Due diligence is a fluid concept that must be determined on a case by case basis, and is a question of fact subject to the clearly erroneous standard of review . . . . However, whether those facts fall within one of Rule 48(c)'s exclusionary provisions is a question of law, the determination of which is freely reviewable.

Id. at 630-31, 817 P.2d at 135 (citations omitted). "A lower court's finding of fact is clearly erroneous when even though there is evidence to support it, the appellate court, based on the entire record, is left with a definite and firm conviction that a mistake has been made." Id. at 631, 817 P.2d at 135 (citation omitted).

Hernane was confined in a prison on the mainland and had to be returned to Honolulu for trial. He concedes that a portion of the time between the supreme court's rejection of the State's application for certiorari and the start of his second trial was chargeable to him under HRPP Rule 48(c)(1) and (3).[2]

_____

[2] HRPP Rule 48(c) provides, in relevant part:

(c) Excluded periods. The following periods shall be excluded in computing the time for trial commencement:

(1) periods that delay the commencement of trial and are caused by collateral or other proceedings concerning the defendant, including but not limited to penal irresponsibility examinations and periods during which the defendant is incompetent to stand trial, pretrial motions, interlocutory appeals and trials of other charges;

. . . .

(3) periods that delay the commencement of trial and are caused by a continuance granted at the request or with the consent of the defendant or defendant's counsel[.]

The issue presented by this appeal is whether the State used due diligence to procure Hernane's return to Honolulu for trial.

> In determining whether a state used due diligence to procure a defendant's presence for trial, the focus is on what was done by the state rather than on what was not done. [S]ee also Ingram v. State, 703 P.2d at 431 ("In determining whether due diligence has been shown, our primary emphasis must be on the reasonableness of the efforts actually made, not on the alternatives that might have been available."). It has been held that when authorities follow the procedure suggested by the custodian jurisdiction, justifiably relying on its assertions, then due diligence is established.

Jackson, 8 Haw. App. at 632, 817 P.2d at 135-36 (some citations omitted).

Hernane challenges the following findings of fact made by the Circuit Court:

9.  Following the April 12, 2016 status conference, the Department of the Prosecuting Attorney (Honolulu Prosecutor's Office) began making efforts to procure Defendant's return to Honolulu for retrial.

. . . .

12. There is an established procedure for the Honolulu Prosecutor's Office to request the return of a Hawaii prisoner who is incarcerated in an out-of-state facility. The Honolulu Prosecutor's Office submits a request to the Department of Public Safety (DPS) and relies on DPS to return the Defendant for trial.

Hernane does not challenge the following findings of fact:

13. The Honolulu Prosecutor's Office exercises no control over DPS. Furthermore, the Honolulu Prosecutor's Office does not have the authority or capability to remove a Hawaii prisoner incarcerated in an out-of-state facility for Hawaii charges and return that Hawaii prisoner to Hawaii for trial.

14. On April 13, 2016, Deputy Prosecuting Attorney Scott Bell (DPA Bell) sent an email to Ms. Rausch and [DPA paralegal] Ms. Chinen with the following message: "Please submit the request to the Department of Public Safety to have Defendant Charly D. Hernane returned to Hawaii for retrial."

15. Ms. Chinen forwarded this request to . . . DPS.

16. On Thursday, April 14, 2016, Ms. Chinen sent an email to DPA Bell informing him that [DPS] confirmed that Defendant would be brought to Hawaii on the next charter set for July 2016.

. . . .

4

21. On Monday, July 11, 2016, Ms. Rausch informed DPA Bell via email that, according to [DPS], Defendant was scheduled to return on Tuesday, July 19, 2016.

22. Defendant returned to Hawaii on Tuesday, July 19, 2016.

The testimony of Rausch, a paralegal with the trials division of the Department of the Prosecuting Attorney (**DPA**), and the exhibits in evidence for the hearing support the contested findings of fact. Findings of fact nos. 9 and 12 are not clearly erroneous.

Hernane also challenges the Circuit Court's conclusions of law nos. 13, 14, 15, and 16. A trial court's label of a finding of fact or a conclusion of law is not determinative of the standard of review. Crosby v. State Dep't of Budget & Fin., 76 Hawai'i 332, 340, 876 P.2d 1300, 1308 (1994). A conclusion of law that is supported by the trial court's findings of fact and reflects an application of the correct rule of law will not be overturned. Est. of Klink ex rel. Klink v. State, 113 Hawai'i 332, 351, 152 P.3d 504, 523 (2007). When a conclusion of law presents mixed questions of fact and law, we review it under the "clearly erroneous" standard because the court's conclusions are dependent on the facts and circumstances of each individual case. Id. Conclusion of law no. 13 states:

13. In this case, the Honolulu Prosecutor's Office made [sic] exercised due diligence and made good faith efforts to return Defendant to Hawaii for retrial.

This presents mixed findings of fact and conclusions of law. For the reasons explained above, it is not clearly erroneous.

Conclusions of law nos. 14 and 15 state:

14. Defendant was "unavailable" for purposes of HRPP Rule 48(c)(5) while Defendant was incarcerated in Arizona until he was returned to Hawaii on July 19, 2016. The court concludes that the following time periods are excluded under HRPP Rule 48(c)(5), 48(c)(8), and Jackson:

a. March 23, 2016 to July 19, 2016: 118 days; and/or

b. April 12, 2016 to July 19, 2016: 98 days; and/or

c. May 3, 2016 to July 19, 2016: 77 days.

15. Based on the foregoing, the court concludes as follows:

   a. The total time from the March 23, 2016 "Order Rejecting Application for Writ of Certiorari" to the February 5, 2018 filing of Defendant's "Motion to Dismiss for Violation of HRPP Rule 48 and Speedy Trial" is 684 days.

   b. The time from July 22, 2016 to December 7, 2017 (503 days) is excluded due to continuances requested by the defense and Defendant's lack of fitness to proceed.

   c. The difference between 684 days and 503 days is 181 days.

   d. 181 days less the time period attributed to Defendant's unavailability, see Conclusion of Law 14, supra, results in a difference of less than 180 days.[1]

   ---
   [1] This is true regardless of which of the three alternatives is used.

(footnote in original). These are mixed findings of fact and conclusions of law. For the reasons explained above, they are not clearly erroneous.

Conclusion of law no. 16 states:

16. Accordingly, Defendant's right to trial commencement under HRPP Rule 48 has not been violated.

This conclusion of law is supported by the Circuit Court's findings of fact and reflects an application of the correct rule of law. The Circuit Court's FOF&COL is affirmed.

## B. The Circuit Court Did Not Err When it Responded to the Jury Communications

Hernane also contends that the Circuit Court erred by giving prohibited "Allen charges" to the jury in response to two jury communications. The term refers to the case of Allen v. United States, 164 U.S. 492 (1896), in which the trial court instructed a deadlocked jury:

that, if much the larger number were for conviction, a dissenting juror should consider whether his [or her] doubt was a reasonable one which made no impression upon the minds of so many men [and/or women], equally honest, equally intelligent with himself [or herself]. If, upon the other hand, the majority was for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the

> correctness of a judgment which was not concurred in by the
> majority.

State v. Fajardo, 67 Haw. 593, 596-97, 699 P.2d 20, 22 (1985)

(quoting Allen, 164 U.S. at 501).  In Fajardo, a jury in a murder

trial reported being deadlocked on the fourth day of

deliberations and requested instruction.  The trial court's

response, among other things, included the following statements:

> I am going to ask that you continue your deliberations in an
> effort to agree upon a verdict, and I have additional
> comments I would like you to consider as you do so.
>
> . . . .
>
> . . . Each juror who finds himself [or herself] to be in the
> minority should reconsider his [or her] views in the light
> of the opinion of the jurors of the majority.

Id. at 594-95, 699 P.2d at 21 (emphasis omitted).  One hour

later, the jury returned a manslaughter verdict.  The Hawai'i

Supreme Court held that giving the Allen instruction was

prejudicial and reversible error, and categorically disapproved

its use.  Id. at 601, 699 P.2d at 25.

In this case, the jury began deliberating on Monday,

February 12, 2018, just before 1:00 p.m.  Shortly thereafter, the

jury sent Communication No. 1, requesting certain transcripts.

At 2:20 p.m. the court responded:

> The transcripts for this trial are not available for your
> review.  Please rely upon your collective recollection of
> the testimony and evidence at trial.

At 3:25 p.m. the jury sent Communication No. 2, which stated:

> We can not unanimously agree on any of the 6(charges)/.
> [sic] verdicts.

The Circuit Court responded at 3:50 p.m.:

> Consistent with all of the instructions provided by the
> court, please continue to deliberate with a view toward
> reaching a unanimous verdict.  Each of you must decide the
> case for yourself, but it is your duty to consult with one
> another and to deliberate with a view to reaching an
> agreement, if you can do so without violating your
> individual judgment.  In the course of your deliberations,
> do not hesitate to re-examine your own views and change your
> opinion if convinced it is erroneous.  But do not surrender

> your honest belief as to the weight or effect of evidence
> for the mere purpose of returning a verdict.
>
> The Court is releasing you for the day. Please return
> tomorrow (Tuesday) at 1:00 p.m. for further deliberations.

Hernane argues that the Circuit Court's failure to ask the jury "whether more time would assist it in reaching a unanimous verdict" made the court's response a prohibited Allen instruction. We disagree; the Circuit Court's response was not an Allen instruction because it neither stated nor implied that the jurors in the minority should reconsider their position in light of the findings of the majority. To the contrary, the Circuit Court's response was consistent with what the supreme court suggested would have been appropriate in Fajardo, 67 Haw. at 601 n.2, 699 P.2d at 25 n.2, and was not error.

Three of the jurors were unable to return on Tuesday as directed. The jury was instructed to return on Wednesday, February 14, 2018, at 8:30 a.m. At 1:40 p.m. that day the jury sent Communication No. 3, which stated:

> One or more jurors are not following the court guidelines
> and we can not unanimously agree on a verdict.s. [sic] We
> are at a stand still.

The Circuit Court responded at 2:25 p.m.:

> You are released for today. Please return tomorrow at 8:30
> a.m. for further instructions.

Hernane again argues that the Circuit Court's "failure to ask the jury whether more time would assist it in its deliberations" made the court's response a prohibited Allen instruction. Hernane contends that any time a trial court fails to ask, in response to a jury communication concerning a deadlock, whether more time would assist the jury in reaching a verdict, the court's instruction to continue deliberating is an impermissible Allen instruction. We disagree. An Allen instruction is one in which the trial court suggests that the jurors holding the minority view reconsider their evaluation of the evidence, implying – or, in the Allen case, actually stating – that "the minority ought to ask themselves whether they might not reasonably doubt the

8

correctness of a judgment which was not concurred in by the majority." Allen, 164 U.S. at 501.

Citing to Justice Acoba's concurring opinion in State v. Matavale, 115 Hawai'i 149, 171, 166 P.3d 322, 344 (2007), Hernane argues that the Circuit Court impermissibly "pressured the jury to reach a verdict based on compromise and expediency" (alterations omitted).  That was not the holding of Matavale. The majority opinion[3] declined to address the Allen issue because the holding that there was insufficient evidence to support the conviction rendered the Allen issue moot.  Id. at 169, 166 P.3d at 342.

When a jury reports a deadlock:

> Good trial practice requires a judge to determine whether future deliberations will be futile by questioning the jurors and by considering the nature and complexity of the case, the length of the trial, and the time spent in deliberations. A judge may summon the jury to inquire into the status of its deliberations or may follow instead the more cautious procedure of waiting until the jury takes the initiative. The judge may question the foreperson or may poll the other jurors as well. A jury's firm statement of deadlock may be accepted by the judge or further deliberations may instead be required, with or without additional instructions relating to elements in the case, the burden of proof, or the nature of the unanimity requirement.

State v. Moriwake, 65 Haw. 47, 53 n.6, 647 P.2d 705, 710 n.6 (1982) (citation omitted).

Hernane's jury had deliberated for less than seven hours over the span of two days.  At 8:30 a.m. on the third day of deliberations, the Circuit Court provided the following supplemental response to Communication No. 3:

> The Court is in receipt of Communication No. 3 which reads as follows:  "One or more jurors are not following the court guidelines and we cannot unanimously agree on a verdict.  We are at a standstill."

---

[3]     Chief Justice Moon authored the majority opinion, joined in by Justice Levinson.  Justice Acoba concurred in the result, agreeing that the evidence was insufficient to rebut the defendant's parental justification defense under Hawaii Revised Statutes **(HRS)** § 703-309(1) (1993).  The dissenting opinion, authored by Justice Nakayama and joined in by Justice Duffy, noted that the instruction at issue "was virtually identical to the instruction recommended in Fajardo" and therefore "did not amount to an impermissible Allen-like instruction."  Id. at 180, 166 P.3d at 353.

As to the first part of the communication which reads, "One or more jurors are not following the court guidelines," the Court reminds you that each juror is required to follow all of the court's instructions regardless of any personal disagreement or difference you may have regarding these instructions. Both sides are entitled to a fair and impartial jury which objectively decides the facts and dispassionately applies the law. Page 1 of the Court's instructions reads in pertinent part:

> You are the judges of the facts of this case. You will decide what facts were proved by the evidence. However, you must follow these instructions even if you disagree with them.
>
> You must consider all the instructions as a whole and consider each instruction in the light of all the others. Do not single out any word, phrase, sentence or instruction and ignore the others. No word, phrase, sentence or instruction is more important just because it is repeated in these instructions.

Without providing any information concerning the effect of anything upon any juror's mind, emotions or mental processes, are all 12 jurors able to follow all of the Court's instructions? Please answer in the appropriate space below.

. . . .

If your answer is "No," please cease all deliberations and summon the bailiff to retrieve your response.

If your answer is "Yes," please answer the following question: With all 12 jurors able to follow the Court's instructions, will more time assist the jury in reaching a unanimous verdict?

. . . .

If your answer is "Yes," please continue to deliberate consistent with the entirety of all of the Court's instructions.

If your answer is "No," please cease all deliberations and summon the bailiff to retrieve your response.

This was not a prohibited Allen instruction. The Circuit Court's question "will more time assist the jury in reaching a unanimous verdict?" addressed the issue raised by Justice Acoba in Matavale, and was appropriate as noted by the footnote in Moriwake quoted above. At 8:45 a.m. the foreperson answered both questions "Yes." The jury continued to deliberate. At 10:31 a.m. on February 15, 2018, the Circuit Court received Communication No. 4 indicating the jury reached a verdict. There was no instructional error.

## III.

For the foregoing reasons, the Judgment of Conviction and Sentence is affirmed.

DATED: Honolulu, Hawai'i, April 11, 2019.

On the briefs:

Jon N. Ikenaga,
Deputy Public Defender,
for Defendant-Appellant.

Stephen K. Tsushima,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.

Chief Judge

Associate Judge

Associate Judge

11